(Clark County Probate Court.)

THE OHIO SOUTHERN R. R. *v.* MARY E. HINKLE ET AL.

1. A railroad corporation, in the proper construction of its road bed, having thrown earth, etc., upon a strip of land adjoining its right of way, may appropriate the land so taken by condemnation proceedings.

2. The power conferred by statute is to appropriate so much as may be *deemed necessary* for its *railroad.* The corporation is to determine how much is necessary, and unless there is a clear abuse in the attempted exercise of this power, the court upon the preliminary hearing will not interfere to determine the matter.

3. Railroads, from the nature of the locomotion thereon, require an evenness of grade, and this necessitates the cutting of hills and the filling of valleys. In making these cuts or excavations, earth and material must be removed, and where not proper to be used in a fill, a place to put such removed material is as much of a necessity as any other matter in the construction of the railroad. Likewise it is necessary to acquire sufficient width of right of way for sloping embankments, self-supporting on either side of the roadway. The appropriation of property for either of the above purposes, is an appropriation for railroad uses and purposes, within the meaning of sections 3270, 3281 and 6416, of the Revised Statutes,

4. The power of eminent domain attaches to every kind of interest in real property.

5. The mere fact that a railroad in the building and operation of the road seizes the property of another and converts it to its own use, cannot defeat its right to appropriate the same, in the manner provided by law, and thus render to the owner *full compensation* therefor, as by the constitution required; *Provided* always that such property was necessary to construct, maintain and operate the railroad, in the usual and ordinary manner in which railroads are constructed, maintained and operated.

———

ROCKEL, J.

Plaintiff in its petition alleges that it " is a railroad corporation organized and existing under the laws of Ohio, and is engaged in the operation of its line of railroad from Wellston, in Jackson county, to Springfield, in Clark county, Ohio, and about eighteen months prior to the filing of this petition plaintiff located and commenced the construction of an extension of its railroad from the city of Springfield, in said Clark county, the northern terminus thereof, to the city of Lima, in Allen county, in said state of Ohio.

" The line of extension was located over and across certain lands belonging to the defendants above named, who are residents of said Clark county, Ohio, and the right of way of such extension through said lands was heretofore acquired by the plaintiff herein from the defendants, which strip was 66 feet wide, lying 33 feet on each side of the center line of said extension to Lima, in Allen county, Ohio.

" Plaintiff avers that in making the grade for such extension where the same passes through and along said 66 foot strip of land acquired from the defendants, it became necessary to excavate the same to a depth of from 10 to 15 feet continuously across the lands of the defendants, and that it did excavate the same to such depth, and by reason of the depth of the cut for some distance on each side of the lands of the plaintiff, both north and south thereof, it became and was necessary and did pile the dirt so excavated on the east side of the cut, and that such dirt so excavated has been thrown over the adjoining lands of the defendants for a distance of 35 feet east of the east line of the right of way heretofore acquired as above set out, and that the plaintiff is to-day occupying the same with said embankment. Plaintiff avers that the land hereinafter specifically described belonging to the defendants was and is necessary for the purpose of constructing and maintaining its said railroad extension."

Here follows a description of the land sought to be appropriated, being a strip 35 feet wide along its east boundary line. The petition continues, " Plaintiff avers that it is authorized by law to make appropriations of private property, and that it has taken possession of and is occupying the

above described tract of land, and that the same has not been appropriated by it, and has not been paid for, and that it is not held by any agreement in writing with the owners thereof. Plaintiff further avers that the same is occupied by the embankment above mentioned, and that the same was placed thereon necessarily in the construction of its said extension, and that said strip of land is necessary for the purpose of maintaining its said embankment. Plaintiff says that it is unable to agree with the owners of the said premises as to the amount of money to be paid for the same, and therefore plaintiff files its petition herein for the purpose of procuring the appropriation of said strip of land to its use for the purpose above named, and for railroad purposes. Wherefore plaintiff prays for the appropriation of the above described real estate to its use, and for the purpose named and for railroad purposes, and that such proceedings may be had to secure such appropriation as are authorized by law."

To this petition a general demurrer has been filed. In support of this demurrer it is claimed: *First*—That the railroad having been built and now in operation, it has exhausted its power, and cannot now appropriate the land in the petition described for the purpose therein set forth. *Second*—That the statute does not authorize condemnation of land for the purpose alleged in the petition. *Third*—That there is no necessity for the appropriation, such as will sustain the taking of private property for public purposes.

The law guards with a zealous care the sacred right of ownership to property, and statutes interfering with that right receive a strict and almost literal construction. The power to appropriate private property for a public use is one recognized by all governments, but it can only be exercised in a manner clearly and specifically designated, Nothing is received by implication, nothing added by judicial consideration. Unless the right is clearly granted, it fails. The following sections relate to such rights of a railroad corporation :

Sec. 3270. " A railroad company, now existing or hereafter created, may maintain and operate, or construct, maintain, and operate, a railroad with a single or double track, with such side-tracks, turnouts, offices, depots, round-houses, machine-shops, water-tanks, telegraph-lines, and other necessary appliances, as it deems necessary, between the points named in the articles of incorporation, commencing at or within, and extending to or into, any city, village, town, or place named as a terminus of its road. (69 v. 203, sec. 4.)

Sec. 3281. " A company may enter upon land, and appropriate so much thereof as may be deemed necessary for its railroad, including necessary side-tracks, depots, work-shops, round houses, and water-stations, material for construction, except timber, a right of way ovea adjacent lands sufficient to enable it to construct and repair its road, and the right to construct water by acquaducts, and to make proper drains; but no appropriation of private property to the use of a company shall be made until full compensation therefor is made in money, or secured by deposit of money, to the owner, irrespective of any benefit from any improvement proposed by the company, as prescribed by law. (50 v. 274, sec. 10.)"

By these sections it will be seen that if the necessity of the appropriation exists, and it is for a purpose contemplated by the statute, the appropriation may be made after as well as before the building of the road. " A railroad now *existing*, or hereafter created, may maintain and operate or construct, maintain and operate a railroad," etc., is the language of section 3270.

The conferring of the power of appropriation upon an existing railroad, was no doubt done for a purpose. That it was done to meet the very objection urged in this cause, was the opinion of the learned Judge who de-

livered the decision of the court in *N. & T. R. R.* v. *De Vaney*, 42 Miss. ——.
In this opinion it was said : " The question of the power of railroad com-
panies to take lands in *invitum.* for the purpose of re-locating, repairing, or
altering their tracks or lines of road, is now for the first time before this
court.    The first authority I shall notice relied on by counsel is the case
of *Morehead* v. *L. M. R. Co.*, 17 Ohio, 340.    The railroad company in this
case had located their road through a street in the city of Cincinnati, Ohio,
and when in full operation, it attempted to make a double track on a lot
of a private individual, with a view of abandoning the line of track through
the street.    The court enjoined the company from further proceedings, giv-
ing as their reason *that there was no necessity for the change, and it was not a case
for the exercise of any implied power.*    Citing the case of *The Litte Miami R. R.*
v. *Nagler*, 2 Ohio, and affirming it.
    " It will be observed from the language of the distinguished chief jus-
tice who delivered the opinion of the court in the case, there was no *neces-
sity* for the change.    It may not be amiss here to state that the decision in
the Ohio case just referred to carried the passage by the legislature of an
act authorizing all railroad companies in the state, existing or to be con-
structed, the power to alter, re-locate, or repair their roads, by taking any
lands they may deem proper *in invitum*, upon the same terms as specified
and prescribed by their charter, viewing the 170, as oppressive and detri-
mental to the great railroad interests of that state.
    We can see no reason why railroad companies should, not be permitted
to alter the location of their depots and their tracks when no detriment to
the public ensues."
    The 17th Ohio, 541, was made upon a different law than the present
one, and can have but little application to the present statute unless it be to
show the purpose of the change, as suggested by the Mississippi judge.    *A
railroad now existing* may not only maintain and operate a railroad, but it
may *construct*, maintain and operate a railroad.    The case of *Deitrick* v. *L.
& N. W. R. R.*, 13 Neb. 365, is important by reason of the great similarity
of their statute and our own.
    Chief Justice LAKE in announcing the opinion of the court says :    "In
*Pranther* v. *Jeffersonville N. & I. R. Co.*, 53 Ind. it is said that : ' It is firmly set-
tled that the making the appropriation does not exhaust the power, but new
appropriation may be made from time to time as the necessity may require.'
To the same effect is the decision in *The Tol. & W. R. R.* v. *Daniels*, 16 Ohio
St. 390, under a statute of which ours is the substantial copy.    See also,
*Chicago B. & O. R. R.* v. *Wilson*, 17 Ill. 120.    We are aware that there are
cases in which a contrary rule is held, but they arose under statutes where-
in the interest of the legislature to limit the power of the company to that
taken for the original construction of the road, was apparent.    We find
nothing in our statutes indicative of such intent, but on the contrary,
an intent, the very reverse of this seems manifest.
    " By section 81 Ch. 16, Comp. Statutes, it is provided that, ' Such cor-
poration is authorized to enter upon any lands for the purpose of exam-
ining and surveying its railroad line, and may take hold and appropriate
so much real estate as may be necessary for the location, construction and
convenient use of its road, including all necessary grounds for stations,
buildings, work-shops, depots, machine-shops, switches, side-tracks, turn-
tables and water-stations, etc.
    " It seems to us that it would be an exceedingly narrow construction
of this language to hold that it does not authorize an additonal condem-
nation of land by a company, when it is ascertained that the quantity
first appropriated is inadequate to the convenient use of the road."
    To the same import is the case of *C., B. & Q. R. R.* v. *Wilson*, 17
Ill. 127, in which it is said : "One of these questions is, that the road

itself having been actually completed and running, the power to condemn land, either for the track of the road or appendages, is exhausted. In this view we cannot concur. It would be a disastrous rule indeed to hold, that a railroad company must in the first instance, acquire all the grounds it will ever need for its own convenience or the public accomodation."

But if there ever was any doubt in this state upon the power of an existing railroad to exercise the right of eminent domain, it has been completely wiped out by the decision of *T. & W. R. R.* v. *Daniels*, 16 Ohio St. 300.

While in this case it was only decided that "Under the general corporation act of 1852 a railroad company has power to condemn land for new side-tracks, leading from the main road to its depot buildings, whenever they become necessary in the proper management and operation of the road," the language of the court in this as well as the other cases before quoted from is broad enough to include other than new side-tracks. The statute is broader now and more general than it was when the 16th Ohio St. was rendered.

Having come to the conclusion that an existing railroad corporation may appropriate, the next question is, what may it appropriate?

By section 3270, it may construct, maintain and operate a *railroad*, and by section 3281, it may enter upon any land for the purpose of examining and surveying its railroad line, and appropriate so much thereof as may be deemed necessary for its *railroad*, etc."

The term "railroad" has various applications. It may mean the corporation, or the ground occupied by its roadbed, right of way, depots, sidings, etc.; or it may include these and the rolling stock in use thereon.

Sec. 3281, as to how much may be appropriated, is much broader than the provisions in many other states, where a limitation is made as to its width of the right of way.

But with us the power conferred is to appropriate so much as may be deemed necessary for its railroad. The corporation is to determine how much is necessary, and unless there is a clear abuse in the attempted exercise of this power the court upon the preliminary hearing will not interfere to determine this matter.

Railroads, from the nature of the locomotion thereon, require an evenness of grade, and this necessitates the cutting of hills and the filling of valleys. In making these cuts or excavations, earth and material must be removed, and where not proper to be used in a fill, a place to put such removed material is as much of a necessity, as any other matter in the construction of the railroad.

Likewise it is necessary to acquire sufficient width of right of way for sloping embankments, self supporting on either side of the roadway. The appropriation of property for either of the above purposes, is an appropriation for railroad uses and purposes, within the meaning of sections 3270, 3281 and 6416, of the Revised Statutes. That the power of eminent domain attaches to every kind of interest in real property, is a proposition that will not bear dispute. This is recognized in sec. 6416, when it is said, "that the names of all *persons having* or *claiming an interest, legal or equitable in the property*," shall be stated in the petition. The mere fact that a railroad in the building and operation of its road seizes the property of another and converts it to its own use, it seems to me cannot defeat its right to appropriate the same, in the manner provided by law, and thus render to the owner *full compensation* therefor as by the constitution required : *Provided*, always that such property was necessary to construct, maintain and operate the railroad, in the usual and ordinary manner in which railroads are constructed, maintained and operated.

The fact that there may be some such seizure, at some time, was fully recognized by the legislature when it enacted section 6448, and gave to the landowners the right to compel the railroads to appropriate and give him full compensation for the land it has converted to its own use. The only thing that will estop the owner from compelling the corporation to appropriate his property by condemnation proceedings is, that the corporation holds it under an *agreement*, in writing. And certainly nothing less would estop the corporation. Indeed, it is somewhat questionable whether or not there could be any estoppel against the railroad company and prevent it from acquiring by appropriation proceedings property already in its use.

Of course, if the corporation acquired and held possession of land in such a way that it would never be disturbed in its use, there would be no necessity for the appropriation.

But if it was held merely by license, a terminable or faulty lease, it seems to me the owner's interest therein might still be appropriated. In the case at bar, the railroad company originally appropriated a right of way 66 feet in width. When they began to make the excavation required, they found they had nowhere to deposit the dirt. They then placed it, either by or without the consent of the owner, upon this adjoining strip, which they now seek to appropriate. There is no question but what in the original proceeding they could have appropriated the 100 feet as rightfully as the 66 feet. It is reasonable to presume that the reason why the 100 feet was not originally appropriated, was because the railroad company supposed that the road could be built upon a 66 foot right of way.

But by actual demonstration it was proven that more was needed. The *necessity* required by law became a demonstrated fact. To hold that a railroad corporation could not appropriate by condemnation proceedings that which from necessity, in the construction of its road, it was compelled to convert to its own use, would be the enunciation of a doctrine wholly at variance with justice and the law of eminent domain. It would encourage and perhaps demand the taking of more land than is absolutely required, or ought to be taken. No one is wise enough to know how much is always required, and if it was held that land needed could not afterwards be condemned, the very largest amount would have to be taken in the first instance. This has never been encouraged.

The fault of which complaint is most frequently made in reference to railroad corporations is, that they attempt to appropriate too much, not too *little*.

There may not now exist an absolute necessity, on the part of the railroad company, to have this strip of land; but the existence of an absolute necessity is not required. When the plaintiff will have appropriated this additional strip, its right of way will be but 100 or 101 feet, but little if any above the average width in Ohio. The corporation deem this amount necessary, and the court is not willing to say that their demand is unreasonable or unjust. The petition alleges that it is necessary for the purpose of maintaining the embankment necessarily placed thereon, and for *railroad purposes*.

This allegation describes a use for which the statute permits an appropriation. If this corporation is not permitted to condemn this strip of land, the owner must either suffer the loss of its use forever, or bring an action to compel the railroad company to condemn, or an action for the unlawful entry and possession, to recover possession and damages for use and occupation. 35 Ohio St. 531.

If this strip is now occupied by a large embankment of earth, gravel, etc., as is reasonable to presume from allegations of the petition, its use for any other purpose, is absolutely destroyed.

The remedies therefore afforded the defendant will not grant a more

complete relief than that proposed by the plaintiff. In this action the defendant has thrown around her the constitutional guarantee of *full compensation* for her property taken, to be determined by a fair and impartial jury of her neighboring citizens.

The plaintiff has voluntarily brought itself in an action where the liberal procedure afforded in such cases aids the defendant in her cause. The allegations of the petition appearing therefore to be sufficient, the demurrer is overruled.

*H. T. Mathers*, for plaintiff.

*C. S. Olinger*, for defendant.